| UNITED STATES BANKRUPTCY COURT | |
| :---: | :---: |
| **FOR THE SOUTHERN DISTRICT OF CALIFORNIA** | |
| In re: | CHAPTER 11 |
| Ambassadors International Ministries | CASE NO.: 09-10335-B11 |
| Debtor(s). | |

AMBASSADORS INTERNATIONAL MINISTRIES DISCLOSURE STATEMENT, DATED 01/21/2010

TABLE OF CONTENTS

I **INTRODUCTION** ............................................................................................ 1

  **A.**  **Purpose of This Document** ............................................................ 2

  **B.**  **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing** ................ 2

    1.  *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan.* ........................................................ 2

    2.  *Deadline For Voting to Accept or Reject the Plan* ........................... 2

    3.  *Deadline For Objecting to the Confirmation of the Plan.* ................ 3

    4.  *Identity of Person to Contact for More Information* ........................ 3

  **C.**  **Disclaimer** ............................................................................... 3

II **BACKGROUND** ........................................................................................... 3

  **A.**  **Description and History of the Debtor's Business** ........................ 3

  **B.**  **Insiders of the Debtor** ............................................................... 3

  **C.**  **Management of the Debtor Before and During the Bankruptcy** ....... 4

  **D.**  **Events Leading to Chapter 11 Filing** ......................................... 4

  **E.**  **Significant Events During the Bankruptcy Case** ......................... 4

  **F.**  **Projected Recovery of Avoidable Transfers** ............................... 5

  **G.**  **Claims Objections** ................................................................... 5

  **H.**  Current and Historical Financial Conditions ................................. 5

III **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ...................................................... 5

A.   What is the Purpose of the Plan of Reorganization? ......................................... 5

B.   Unclassified Claims ...................................................................................... 5

   1.   *Administrative Expenses* ......................................................................... 6

   2.   *Priority Tax Claims* ................................................................................. 7

C.   Classes of Claims and Equity Interests ....................................................... 7

   *1.   Classes of Secured Claims* ...................................................................... 7

   2.   *Classes of Priority Unsecured Claims* ..................................................... 9

   3.   *Class[es] of General Unsecured Claims* ................................................... 9

   *4    Class[es] of Equity Interest Holders* ....................................................... 9

D.   Means of Implementing the Plan ................................................................ 10

   *1.   Source of Payments* ............................................................................... 10

D.   Risk Factors ............................................................................................... 11

F.   Executory Contracts and Unexpired Leases ............................................... 11

G.   Tax Consequences of Plan .......................................................................... 11

**IV  CONFIRMATION REQUIREMENTS AND PROCEDURES** ........................... 11

A.   Who May Vote or Object? ........................................................................... 12

   *1.   What Is an Allowed Claim or an Allowed Equity Interest?* ......................... 12

   *2.   What Is an Impaired Claim or Impaired Equity Interest?* ......................... 12

   *3.   Who is **Not** Entitled to Vote?* ................................................................ 13

   *4.   Who Can Vote in More Than One Class?* ................................................. 13

B.   Votes Necessary to Confirm the Plan. ......................................................... 13

   *1.   Votes Necessary for a Class to Accept the Plan.* ...................................... 14

   *2.   Treatment of Nonaccepting Classes* ........................................................ 14

C.   Liquidation Analysis .................................................................................. 14

D.   Feasibility .................................................................................................. 14

   *1.   Ability to Initially Fund Plan* ................................................................. 15

2.    Ability to Make Future Plan Payments and Operate Without Further Reorganization 15

**V  EFFECT OF CONFIRMATION OF PLAN** ................................................................ 15

A.    **DISCHARGE OF DEBTOR** ................................................................................ 15

B.    **Modification of Plan** ........................................................................................... 15

C.    **Final Decree** ........................................................................................................ 16

**VL  OTHER PLAN PROVISIONS** ................................................................................ 16

16

1   STEVEN R. HOUBECK, ESQ. #168018
    Attorney at Law
2   P.O. Box 150
    Cardiff, CA 92007
3   (619) 463-4357

4

5

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10  In re                                    CASE NO.: 09-10335-B11

11  AMBASSADORS INTERNATIONAL
    MINISTRIES                               Chapter 11

12
                                            DISCLOSURE STATEMENT
13                      Debtor.

14  .                                        Date:  March 11, 2010
                                            Time:  10:00 am
15                                          Dept:  4
                                            Judge: Hon. Peter Bowie
16

17

18                                  I

19                           **INTRODUCTION**

20  This is the disclosure statement (the "Disclosure Statement") in Chapter 11 case of Ambassadors

21  International Ministries (the "Debtor").   This Disclosure Statement contains information about

22  the Debtor and describes the plan (the "Plan") filed by the Debtor on January 22, 2010.   A full

23  copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.  *Your rights may be*

24  *affected.  You should read the Plan and this Disclosure Statement carefully and discuss them*

25  *with your attorney.  If you do not have an attorney, you may wish to consult one.*

26          The proposed distributions under the Plan are discussed in this Disclosure Statement.

27  General unsecured creditors are classified in Class __3__, and will receive a distribution

28  of 100% of their allowed claims.

                           DISCLOSURE STATEMENT
                                   1

## A.    Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why [the Proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan:*

The hearing at which the Court will determine whether to approve this Disclosure Statement and confirm the Plan will take place on <u>March 11, 2010</u>, at 10:00 am, in Department 4, at the United States Bankruptcy Court, 325 West "F" Street, San Diego, CA 92101.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Steven R. Houbeck, Esq., 7851 Mission Center Court San Diego, CA 92108. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by <u>March 1, 2010</u> or it will not be counted.

      3.  *Deadline For Objecting to the [Adequacy of Disclosure and] Confirmation of the Plan.*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon interested parties not later than 25 days from the date of service of said pleadings.

      4.  *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Debtor's attorney.

**C.    Disclaimer**

*The Court has not approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. [The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed within 25 days of the date of service of said pleading.*

**II.**

**BACKGROUND**

**A.    Description and History of the Debtor's Business**

The Debtor is a non-profit corporation. Since 1989 the Debtor has been in the business of Ministry and has a church located at 2770 Globe Road, Lemon Grove, CA 91945.

**B.    Insiders of the Debtor**

Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code") and their relationship to the Debtor are as follows: Dr. Torrance Jacko and his wife, ms. Lisa Jacko. Dr. Jacko is the Director of Debtor, Ambassadors International Ministries or "AIM". Ms. Jacko is the Director of the debtor's child care facility located at the church where AIM functions. During the two years prior to the commencement of the Debtor's bankruptcy

DISCLOSURE STATEMENT

3

case, Dr. Jacko received a salary of $6,933.00 and a housing allowance of $10,000.00 per month from the debtor. Ms. Jacko received a salary of $4,333.00 per month. Upon Court authorization, said parties now receive joint compensation of $14,000.00 per month. This represents about a 35% reduction in compensation by the insiders and is done to assist in Debtor's reorganization.

### C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor  (collectively the "Managers") was Dr. Torrance Jacko.

The Managers of the Debtor during the Debtor's chapter 11 case has been Dr. Torrance Jacko.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be Dr. Torrance Jacko.  The responsibilities and compensation of this Post Confirmation Manager is described in this Disclosure Statement.

### D.    Events Leading to Chapter 11 Filing

Debtor's purchase of their church building and property, located in Lemon Grove, CA, in March 2006 was the singular event that precipitated Debtor's fall into Chapter 11.  The purchase occurred during California's real estate rush and resulted in the Debtor acquiring  real estate at the top of the market.  Debtor overpaid from the property and now finds itself unable to pay the mortgages pursuant to the terms of the notes.  Prior to that, Debtor had no financial problems.

### E.    Significant Events During the Bankruptcy Case

Significant events during the Debtor's bankruptcy case:

- Debtor is expanding its daycare facility at the church to increase revenue.
- Debtor has laid off several employees to cut overhead.
- Debtor insiders have cut their compensation by about 35%.
- Debtor has increased the size of the congregation and thereby increase charitable giving.

DISCLOSURE STATEMENT

4

- Debtor has engaged in new programs to increase church membership.

**F.      Projected Recovery of Avoidable Transfers.**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**G.      Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

**H.      Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit B**.  Pursuant to Debtor's schedule "A" and "B", Debtor has about $11,000.00 in assests.  Most of the value of the estate is the "good will" that is generated by Dr. Jacko's skills and experience as a pastor.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case are set forth in **Exhibit C**.  [A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case as been filed with the Court and is available for public review.]

**III**

**SUMMARY OF THE PLAN OF REORGANIZATION AND**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.      What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.      Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They

may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

   1.   *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | | Paid in full on the effective date of the Plan |
| Other administrative expenses | | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | | Paid in full on the effective date of the Plan |
| TOTAL | | |

### 2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.   Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| IRS payroll tax | $36,113.00 | 12/03/09 | $700 per month          = $700 |
|  |  |  |  |

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment | |
|---|---|---|---|---|---|
| 2(a) | *Secured claim of*: Name = Evangelical Christian Credit Union<br><br>Collateral description = real property located at 2770 Glebe Road, Lemon Grove, CA 91945<br><br>Allowed Secured Amount = $3,521,198.00<br><br>Principal owed = $3,521,198.00<br>Pre-pet. arrearage = $558,928.00<br><br>Total claim = $4,080,126.00 | No | Impaired | Monthly payment at 4% interest only for five years<br><br>Monthly payment on arrears at 4 % interest | =$11,800.00<br><br>=$9,600.00 |
| | *Secured claim of*: Name = Lemon Grove Community Church<br><br>Collateral description = Real property located at 2770 Glebe Road, Lemon Grove, CA 91945<br><br>Allowed Secured Amount = $460,000.00<br><br>Principal owed = $460,000.00<br>Pre-pet. arrearage = $0<br><br>Total claim = $460,000.00 | No | Impaired | Monthly Pmt Pmts Begin<br><br>Balloon payment five years from effective date<br>Interest rate 0% | =0<br><br>=$460,000.0 |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| | None | | |
| | | | |

3.    *Class[es] of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 3, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| | | | |
| 3 | General Unsecured Class (estimated at $105,384.00) | Unimpaired | Monthly Payment begins on effective    =$1800.00 date.<br><br>Pmts End  within five years of effective date. Estimated percent of claim paid 100% . |

4    *Class[es] of Equity Interest Holders*

DISCLOSURE STATEMENT

9

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
|         | None        |            |           |

### D.    Means of Implementing the Plan

*1.    Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Charitable giving from the Debtor's congregation.

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes/no)? | Position | Compensation |
|------|--------------|-------------------|----------|--------------|
| Dr. Torrance Jacko | Director of AIM | Yes | Director of AIM | $14,000.00 (monthly compensation for both he and Ms. Lisa Jacko) |
| Ms. Lisa Jacko | Director of AIM's Daycare facility | Yes | Director of AIM's Daycare facility | |
|  |  |  |  |  |

**D.    Risk Factors**

The proposed Plan has the following risks:

A drop in tithing and charitable giving from congregation will impede progress of the Debor.

**F.    Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in the Plan will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**G.    Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity

interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object?

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that class 2 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that class 3 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

#### 1.    What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was 03/01/2010.**

#### 2.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class

is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

       3.     *Who is **Not** Entitled to Vote?*

      The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

       4.     *Who Can Vote in More Than One Class?*

      A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

    **B.**    **Votes Necessary to Confirm the Plan.**

      If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1.      *Votes Necessary for a Class to Accept the Plan.*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

**C.      Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis demonstrates that the Debtor has about $11,000.00 in assets. The Debtor has about $105,384.00 in general unsecured claims. If said liquidation should occur, these creditors could expect less than a 10% payment on their claim. Debtor currently proposes a !00% claim payment, therefore, general unsecured creditors are better off under Debtor's Chapter 11 Plan than a Chapter 7 liquidation.

**D.      Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Debtors current operating reports demonstrate feasibility.

2.    *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in **Exhibit D**.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of approximately $25,000.00. The final Plan payment is expected to be paid on  June 2015.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

<u>Discharge.</u>  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

### VI.

### OTHER PLAN PROVISIONS

Debtor reserves the right to amend or modify the above pursuant to proper notice.

**Date: January 22, 2010**

Respectfully Submitted

By: /S/ Dr. Torrance Jacko_____
    Dr. Torrance Jacko
Director of Ambassadors International Ministries

By: /S/ Steven R. Houbeck_____
    Steven R. Houbeck, Esq.
Attorney for Ambassadors International Ministries

**EXHIBIT A** – Copy of Proposed Plan of Reorganization

1  Steven R. Houbeck, Esq.  CSB #168018
   Houbeck & Associates
2  Attorneys at Law
   P.O. Box 150
3  Cardiff By The Sea, CA 92007
   (619) 463-4357
4

5

6

7

8

            **UNITED STATES BANKRUPTCY COURT**

9

            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  In re                                    CASE NO.:  09-10335-B11

12  AMBASSADORS INTERNATIONAL                 Chapter 11
    MINISTRIES
13                                            **PLAN OF REORGANIZATION**
              Debtor.
14

15                                            Judge:  Hon. Peter Bowie

16

17

18

19

20

21

22

23

24

25

26

27

28

            PLAN OF REORGANIZATION
                     1

# UNITED STATES BANKRUPTCY COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

In re

AMBASSADORS INTERNATIONAL
MINISTRIES

        Debtor.

Case No. 09-10335-B11
(Chapter 11)

AMBASSADORS INTERNATIONAL MINISTRIES'S PLAN OF REORGANIZATION

DATED JANUARY 22, 2010

## ARTICLE I

## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of AMBASSADORS INTERNATIONAL MINISTRIES (the "Debtor") from future income.

This Plan provides for 1 class of priority claims; 1 class of secured claims; 1 class of unsecured claims; and 1 class of equity security holders.  Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01  Class 1.:**  All allowed claims entitled to priority under § 507 of the Code

(except administrative expense claims under §507(a)(2), and priority tax claims under section § 507(a)(8).

**2.02  Class 2(a).:**  The claim of EVANGELICAL CHRISTIAN CREDIT UNION, to the extent allowed as a secured claim under § 506 of the Code.

**Class 2(b).:**  The claim of LEMON GROVE COMMUNITY CHURCH

**2.03  Class 3.:**  All unsecured claims allowed under § 502 of the Code.

**2.04  Class 4.:**  Equity interests of the Debtor.

## ARTICLE III

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

**3.01  Unclassified Claims:**  Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**3.02  Administrative Expense Claims:**  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03  Priority Tax Claims:**  Each holder of a priority tax claim will be paid [pursuant to 1129(a)(9)(C) and (D) of the Code].  Pursuant to the IRS claim of $36,112.25 (though Debtor does not waive its right of objection), said claim will be paid its statutory rate of interest (estimated at 4%) over a duration of five (5) years in monthly installments of $700.00.  Said payments to commence pursuant to this plan on the effective date of the plan.

**3.04  United States Trustee Fees:**  All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01**  Claims and interests shall be treated as follows under this Plan.

PLAN OF REORGANIZATION

3

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 – Priority Claims | | |
| Class 2(a)   Secured Claim of Evangelical Christian Credit Union | Impaired | 4% interest only for five years on principal upon the effective date. On sixth year, terms pursuant to note.

Arrears to be paid in 60 installment payments at 4% interest upon the effective date. |
| Class 2(b)   Secured Claim of Lemon Grove Community Church | Impaired | Balloon payment in five years of effective date of plan. |
| Class 3 – General unsecured Creditors | Unimpaired | 100% pay of allowed claim |

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01  Disputed Claim:**  A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02  Delay of Distribution on a Disputed Claim:**  No distribution will be made on account of a disputed claim unless such claim is allowed.

**5.03  Settlement of Disputed Claims:**  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01  Assumed Executory Contracts and Unexpired Leases:**

(a)   The Debtor assumes the following executory contracts and/or unexpired leases effective upon the ["effective date of this Plan as provided in Article VII"        'the date of the entry of the order confirming this Plan,' or other applicable date]

(b)   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above upon the effective date of this Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed.

## ARTICLE VII

## GENERAL PROVISIONS

**7.01  Definitions and Rules of Construction:**  The definitions and rules of construction set forth in §§ 101 and 102 of Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

**7.02  Effective Date of Plan:**  The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

**7.03  Severability:**  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**7.04  Binding Effect:**  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**7.05  Captions:**  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**7.06  Controlling Effect:**  Unless a rule of law or procedure is supplied by federal law

(including the Code of the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

     **7.07   Corporate Governance:**  Pursuant to provisions required by § 1123(a)(6) of the Code.

## ARTICLE VIII

## DISCHARGE

     **8.01   Discharge:**  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

     **8.02**   With respect to the priority taxes, the discharge granted by 11 U.S.C. section 1141(d) is modified as to the federal priority tax claim and the discharge of such tax debt under this Plan shall not be effective until the priority tax claim has been paid in full, including interest.

## ARTICLE IX

## DEFAULT

     **9.01   Termination of Automatic Stay and Default:**  The automatic stay provided in 11 U.S.C. Section 362 shall not continue in force after the Effective Date of the Plan; provided, however, all creditors shall be bound by the terms and conditions of the Plan.  There will be a default as to required payments to creditors as follows:

**Administrative Expense Claims:**  The Administrative Expense Claims are to be fully paid in accordance with the Plan or as agreed to by the claimants.  If Debtor is unable to pay any one or all of these claims in full within a reasonable time and that creditor consents to a later payment, then a default will be defined as Debtor and that claimant agree. As to all others, a default will exist if such claim is not paid in full within thirty (30) days of allowance.  **IRS Priority Claim:** If the debtor fails to make payment of any tax to the IRS within 30 days of the due date of such

deposit or payment, or if the debtor fails to file any required federal tax return by the due date of such return, then the United States may declare that the debtor is in default of the plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or debtor is in default. If the IRS declares the debtor to be in default of the debtor's obligations under the plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the debtor. If full payment is not made within 14 days of such demand, then the IRS may collect any unpaid liabilities through the administration collection provisions of the Internal Revenue Code.

**Secured Creditors:** Excluding the properties indicated in Section 9.01, a default will occur as to payment of the Secured if the debtor fails to make the required monthly payments to any secured creditor holding a first or second deed of trust within thirty days of the date due. In the event of any default, a second secured creditor may take any action available to them under applicable bankruptcy law including, but not limited to, seeking foreclose on the underlying security or seek to any remedies available under sate law for breach of contract provided that any such default continue s after thirty days notice to the debtor and their counsel and the failure of the debtor to cure any such default. Upon default, a first secured creditor may take any action available to them under applicable bankruptcy law including, but not limited to, seeking foreclose on the underlying security or seek to any remedies available under state law for breach of contract provided that any such default continues after thirty days notice to the debtor and their counsel and the failure of the debtor to cure any such default. **General Unsecured Claims:** A default will occur as to payment of the General Unsecured Claims if debtor fails to make the required ongoing payments to these creditors within thirty days of the date due. In the event of any default, unsecured creditors may take action to convert and dismiss this case, or appoint a trustee, provided that any such default continues after thirty days notice to the debtor and their counsel and the failure of the debtor to cure any such default.

//
//
//

Dated: January 22, 2010

                                    Respectfully Submitted


                                    By: /S/ Dr. Torrance Jacko_____
                                        Dr. Torrance Jacko
                                    Director of Ambassadors International Ministries


                                    By: /S/ Steven R. Houbeck_____
                                        Steven R. Houbeck, Esq.
                                    Attorney for Ambassadors International Ministries

**EXHIBIT B** – Identify and Value of Material Assets of Debtor

B6B (Official Form 6B) (12/07)

In re  **Ambassadors International Ministries**                                     ,       Case No. 09-10335-B11

Debtor                                                                                            (If known)

# AMENDED - SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | | | 0.00 |
| Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Monies deposited in a bank account at Bank of America** | | 0.00 |
| Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Monies deposited in a bank account at Wells Fargo Bank** | | 0.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Ambassadors International Ministries**                                        ,        Case No.  **09-10335-B11**
                                                  Debtor                                                              (If known)

# AMENDED - SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds.  Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | Lease on Konica Minolta | | 500.00 |
| Office equipment, furnishings, and supplies. | | Office furniture and sanctuary furniture | | 10,000.00 |
| 29. Machinery, fixtures, equipment and supplies used in business. | | Pastor Books | | 500.00 |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested.  Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re   **Ambassadors International Ministries**                                         Case No.   09-10335-B11
                                          **Debtor**                                                                  **(If known)**

# AMENDED - SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

             2     continuation sheets attached                    Total   ▸              $ 11,000.00

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

**EXHIBIT C** –Post-petition Operating Report Summary

(to be taken from those filed with the Court)

**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**SOUTHERN DISTRICT OF CALIFORNIA**

In Re: Ambassadors
International Ministries

Debtor(s).

CHAPTER 11 (BUSINESS)

CASE NO. 09 - 10335 - PB11
OPERATING REPORT NO. 6
FOR THE MONTH ENDING:
Dec 2009

## I. CASH RECEIPTS AND DISBURSEMENTS
### A. (GENERAL ACCOUNT*)

1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS — $ 76,227.93

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL
ACCOUNT REPORTS — $ 64,718.10

3. BEGINNING BALANCE: — $ 11,509.83

4. RECEIPTS DURING CURRENT PERIOD:

| | |
|---|---|
| ACCOUNTS RECEIVABLE - PRE-FILING | $ — |
| ACCOUNTS RECEIVABLE - POST-FILING | $ — |
| GENERAL SALES | $ |
| OTHER (SPECIFY) Tithes/Offering | $ 47,134.24 |
| OTHER ** (SPECIFY) Embassy Academy | $ 742.34 |

TOTAL RECEIPTS THIS PERIOD: $ 55,876.58

5. BALANCE: $ 67,386.41

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD

TRANSFERS TO OTHER DIP ACCOUNTS — $ 25,681.22
DISBURSEMENTS — $ 22,125.43
TOTAL DISBURSEMENTS THIS PERIOD ***: — $47,806.65 ✗

7. ENDING BALANCE: $ 19,579.76

8. GENERAL ACCOUNT NUMBER  5205616237
DEPOSITORY NAME AND LOCATION  Wells Fargo

---

* All receipts must be deposited into the general account.
** Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold, to whom, terms, and date of Court Order or Report of Sale.
***This amount should be the same as the total from page 2.

Debtor-in-Possession Monthly Operating Report (Business) - Page 1 of 13

**EXHIBIT D** – Projected Financial Statement

| | |
|---|---|
| January 2010 net: | $21,000.00 |
| February 2010 net: | $23,000.00 |
| March 2010 net: | $23,000.00 |
| April 2010 net: | $30,000.00 |
| May 2010 net: | $30,000.00 |
| June 2010 net: | $25,000.00 |
| July 2010 net: | $24,000.00 |
| August 2010 net: | $24,000.00 |
| September 2010 net: | $24,000.00 |
| October 2010 net: | $25,000.00 |
| November 2010 net: | $27,000.00 |
| December 2010 net: | $35,000.00 |
| January 2011 net: | $30,000.00 |